UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **RAIL SCALE, INC.** | **CIVIL DOCKET NO. 2:22-cv-00153** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **COASTAL RAIL SCALES, LLC** | **MAGISTRATE JUDGE THOMAS P. LEBLANC** |

## OPINION AND ORDER

This claim construction opinion construes the disputed claim terms in U.S. Patent No. 10,996,100 B2 (the "'100 Patent"), entitled "Method and Apparatus for Calibrating Rail Scales." Both Rail Scale, Inc. ("RSI") and Coastal Rail Scales, LLC ("Coastal") filed opening claims constructions briefs [Docs. 103 and 100, respectively), and responsive briefs were filed thereafter [Docs. 105, 107, 108]. A *Markman* hearing was held on November 26, 2024, to construe the disputed terms of the '100 Patent. For the reasons stated herein, the Court adopts the constructions set forth below.

## OVERVIEW OF THE PATENT

This patent infringement lawsuit arises out of a dispute between RSI and Coastal, two companies that provide railroad scale ("rail scale") testing and calibration services to the railroad industry. Rail scales are scales used to weigh railroad cars and their content. The parties to this dispute are both engaged in the business of calibrating and servicing rail scales to ensure accuracy.[1] The '100 Patent

---

[1] Railroad companies and other third parties, including bulk product suppliers, rely on accurate weight measurements for a host of reasons, including pricing, anti-theft measures, and railroad safety.

is an invention that allows calibration of a rail scale with an apparatus that is transported to the location of the rail scale using roads and highways, rather than rails.  The apparatus is generally described in the Abstract for the '100 patent as follows:

> . . . The apparatus is attached to a first trailer and a second trailer and the[n] move[d] from a first site to a rail scale site over highways and roads.  The apparatus includes a calibration vehicle, bins of weights, and a crane.  The crane positions the calibration vehicle, that is self-propelled, on rails and loads weights on the calibration vehicle.  The combined weight of the calibration vehicle and weights has qualifying values that ensures a scale is in compliance [with] rail scale calibration standards.

[Doc. 1-2, p. 1].

The '100 Patent was filed with the U.S. Patent and Trademark Office on February 5, 2019, and on April 12, 2019, the Inventors assigned the '100 Patent to plaintiff RSI.

### DISPUTE BETWEEN THE PARTIES

In the instant lawsuit, RSI alleges infringement of the '100 Patent by "making, using, selling, and/or offering to sell, and/or causing others to use, methods and systems, including but not limited to Coastal's … rail scale calibration service and product (the "Accused Product") which infringes one or more claims of the '100 Patent, including, but not limited to independent claims 1, 7, and 10."  [Doc. 1, ¶ 27].  RSI alleges that Coastal's Accused Product also infringes one or more of the dependent claims of the '100 patent, *Id.* at ¶ 28, contending that Coastal had actual notice of the '100 Patent as early as February 2019 when Rail Scale filed its patent application with the United States Patent and Trademark Office.  RSI seeks, *inter alia*, an award

of damages adequate to compensate RSI for the infringement that has occurred, as well as lost profits to compensate RSI for Coastal's infringement of the '100 Patent and an injunction permanently prohibiting Coastal from further acts of infringement.

Coastal denies liability and filed counterclaims against RSI, seeking a declaratory judgment that the '100 Patent is invalid and unenforceable and that Coastal's calibration system does not infringe on the '100 Patent. [Doc. 18, ¶¶ 74, 96]. Coastal alleges that in 2018, it bought its rail scale calibration system and equipment from Balanced Railway Certification, LLC ("BRC"), a company that had been owned and operated by two former employees of RSI before going out of business. According to Coastal, BRC had developed, certified, and commercialized the equipment in 2015, and Coastal alleges that the BRC Equipment was in public use as early as 2015 – well before February 4, 2019, which is the earliest filing date on which the '100 Patent is based. *See* 35 U.S.C. § 102(a)(1). BRC's co-founder, Dennis Sandifer, has submitted a declaration in connection with this litigation stating that BRC advertised its rail scale calibration services using the BRC Equipment as early as 2015, [Doc. 65-3, ¶ 4], and that BRC serviced multiple clients using the BRC Equipment from 2016 through 2018. [*Id.*, ¶ 8].

After purchasing the equipment from BRC, but before its annual recertification, Coastal alleges that it made minor modifications to the BRC Equipment that did not relate to the claimed patented features, including repainting the equipment and making minor improvements that did not change any of the configuration, operation, or use of the original BRC system. Coastal argues that its

current rail scale calibration system is materially identical to the rail scale calibration system that it purchased from BRC in 2018.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (internal quotations and citations omitted). Claim construction is a question of law that seeks to give disputed claim terms "the meaning … [they] would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313, citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326 (2015).

Claims "must be read in view of the [patent] specification, of which they are a part." *Phillips*, 415 F.3d at 1315. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* Courts should try to capture the scope of the actual invention and avoid adopting constructions that are divorced from the claim language and specification. *Id.* at 1324. It is improper to "read unstated limitations into claim language." *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1088 (Fed. Cir. 2003). "We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005). A court "should also consider the patent's prosecution history, if it

is in evidence." *Phillips*, 415 F.3d at 1317. Last, a court may rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." But such evidence is of less significance than the intrinsic record. *Id.* at 1317–18.

## CLAIM CONSTRUCTIONS

As an initial matter, the Court notes parallel patent infringement litigation involving RSI and Coastal in the Southern District of Texas and the Eastern District of Tennessee, in which both courts have already ruled on many similar and/or identical claim construction issues. *See Rail Scale, Inc. v. Weighing Technologies, Inc.*, Case No. 4:21-cv-3698 (hereinafter, "*Weighing Technologies*"), and *Rail Scale, Inc. v. Wingfield Scale Co., Inc.*, 2023 WL 8744720, at *2 (E.D. Tenn. Nov. 21, 2023) (hereinafter, *Wingfield Scale*). Although, of course, this Court is not bound by the decisions of other district courts, this Court will certainly take them into consideration and attempt to interpret the disputed claims in a manner that is consistent with the constructions in the *Weighing Technologies* and *Wingfield Scale* cases. *See Linear Tech. Corp. v. Monolithic Power Systems, Inc.*, 2007 WL 6126455 at *2 n.2 (D. Del. Nov 20, 2007) (because patent claims define the metes and bounds of the legal, exclusionary right granted by a patent, adopting conflicting constructions can contravene the public notice function of patent claims). *See also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 730-31 (2002) (by construing claims narrowly in one case (e.g., to avoid prior art), but broadly in another

(e.g. to prove infringement), the public would not know what is or is not covered by the patent); *Phillips*, 415 F.3d at 1312.

Considering the arguments of the parties in their extensive briefing and at oral argument, as well as the applicable jurisprudence, the Court will construe the following terms as indicated hereinafter:

- The words of the preambles to Claims 1, 7, and 10 are to be read as claim limitations.

- "couple to" / "couple into" / "coupling to" shall mean "connected to or joined to."

- "coupling bar" / "extension bar" shall mean "a bar that can be extended or retracted from the spreader bar and is capable of being locked into either position."

- "calibration vehicle" shall mean "vehicle that transports weights to the rail scale for calibration."

- "desired weight" shall be given its plain and ordinary meaning ("PAOM").

- "desired location" shall be given its PAOM.

- "connector for coupling to the crane" / "spreader bar including: a connector for coupling to the crane" shall mean "a connector on the spreader bar for removably attaching to the crane."

- "weight bin" / "bin" shall mean "container having four walls and a base forming a container for storing and transporting weights."

- "weight combinations varying from 8,000 to 80,000 pounds" shall be given its PAOM.

- "railroad track wheels" shall mean "wheels capable of engaging with the railroad track rails."

- "first receiver" and "second receiver" shall mean "cutouts (or inserts) in the side walls of the calibration vehicle that are designed to receive the spreader bar."

All other terms not herein construed shall be given their PAOM or shall be construed at a later point in the litigation to the extent that the Court deems it necessary.

IT IS FURTHER ORDERED that this matter is referred to the assigned Magistrate Judge to hold a scheduling conference with the parties to discuss pre-trial deadlines and set this matter for trial.

THUS, DONE AND SIGNED in Chambers on this 9th day of December 2024.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE